UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IASHIA KNOX,

                Petitioner,                Case No. 2:15-cv-11969
                                                                   Hon. Victoria A. Roberts

v.

ANTHONY STEWART,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Iashia Knox was convicted after she pleaded guilty in the Wayne Circuit Court to second-degree murder. MICH. COMP. LAWS § 750.317. Under the terms of her plea bargain she received a 15-to-30 year sentence. The petition raises two claims: (1) Petitioner's guilty plea was coerced by her counsel, and (2) Petitioner's sentencing guidelines were scored incorrectly. The Court finds that Petitioner's claims were reasonably adjudicated by the state courts. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability, but it will grant permission to proceed on appeal in forma pauperis.

I. Background

Petitioner was originally charged with first-degree murder arising out of the beating death of Hassan Jaber. Petitioner and others agreed to a plan whereby the victim would be bound, beaten, and robbed. Petitioner and Zelda Taylor lured the victim into a house by agreeing to have sexual intercourse with him in exchange for money. Once inside the house, Charles Jackson attacked the

victim, beating him to death.

At Petitioner's plea hearing, the court put the terms of the plea agreement on the record. Petitioner agreed to plead guilty to second-degree murder and testify truthfully against the three other people involved in the murder. In exchange, the prosecutor would dismiss the first-degree felony murder charge, and the court would sentence Petitioner to a term of 15-to-30 years. Petitioner was also informed that if she was found to have testified untruthfully against the other co-defendants, then the original charges would be reinstated.

Petitioner indicated her understanding and agreement, and she indicated that she did not have any questions regarding the plea bargain. Petitioner affirmed that she had discussed the matter of the plea with her attorney.

The trial court then informed Petitioner of all the trial rights she would be waiving by pleading guilty. Petitioner indicated her understanding. The trial court also informed Petitioner that she would be giving up any claim that she was promised anything other than what was placed on the record or threatened in anyway to obtain her plea. Petitioner indicated her understanding, and she affirmed that it was her choice to plead guilty.

Petitioner then admitted under oath that she reluctantly agreed to engage in a sexual act with the victim with knowledge that Charles Jackson would come into the home, hit the victim, tie him up, and rob him. Petitioner stated "I was telling [Taylor] no, then that's when I gave in it was like all right because she kept begging and asking, and then that's when [Jackson] came in and said, you know, I'm going to come in and . . . hit [the victim] and tie him up." Plea Tr. P. 11. Petitioner admitted that she knew part of the plea was to tie the victim up, hit him, and rob him, and she went along with the plan. Id., p. 12. Petitioner admitted that there was a possibility that death or great bodily harm could result as part of the plan. The trial court found that Petitioner's plea was entered

understandingly and voluntarily.

At the sentencing hearing, Petitioner apologized to the victim's family, and stated that she did not deserve the 15-to-30 year sentence. The trial court nevertheless sentenced Petitioner under the terms of the plea agreement.

Petitioner was thereafter appointed appellate counsel who filed a motion to withdraw the plea. A hearing was held on the motion the week before Jackson's trial was set to begin. Petitioner claimed that she was coerced into entering her plea. Petitioner signed an affidavit stating that she wanted to stand trial, and she never intended to harm the victim. She claimed that had her attorney talked with her more about the circumstances of the homicide, he would have been able to secure a better plea bargain. Petitioner indicated she only pleaded guilty because she felt that she had no other choice.

The prosecutor responded that the plea bargain was the result of a lengthy negotiating process and there was no indication from Petitioner at the plea hearing that she was coerced into entering into the deal. The trial court stated he did not believe Petitioner, "I think she is fabricating. I don't know if it's because she doesn't want to testify at the trial on Monday." Tr. 10/18/2013, pp. 7-8.  The trial court denied the motion to withdraw the plea. The trial court also denied the motion for resentencing on the grounds that Petitioner was sentenced in accordance with the negotiated agreement.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, which raised the same claims presented in the current action. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Knox*, No. 318811 (Mich. Ct. App. Dec. 19, 2013). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application

because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Knox*, 847 N.W.2d 640 (Mich. 2014) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted). Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is available if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (internal quotation marks omitted). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous," but rather "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510,

520-21 (2003) (citations omitted). Indeed, under the "unreasonable application" clause of § 2254(d)(1),

> even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*,    U.S.   ; 134 S. Ct. 1697, 1702; 188 L. Ed. 2d 698 (2014) (citations, quotation marks, and alterations omitted). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*,    U.S.   ; 135 S. Ct. 1372, 1376; 191 L. Ed. 2d 464 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*,    U.S.   ; 134 S. Ct. 10, 16; 187 L. Ed. 2d 348 (2013)(internal quotation marks omitted).

### III. Analysis

A. Validity of Plea

Petitioner first argues that her plea was involuntary because it was coerced by her attorney. She points to passages in the plea transcript where she minimizes her culpability as evidence that she did not willingly enter into the plea agreement. The trial court rejected the claim by finding that Petitioner fabricated her allegation that she was coerced. The Michigan Court of Appeals then

summarily denied relief, and its brief order entitles the state to the deferential standard of review under § 2254(d). See *Hynes v. Birkett*, 526 F. App'x 515, 519 (6th Cir. 2013).

To be valid, a guilty plea must be voluntarily and intelligently made. *Brady v. U.S.*, 397 U.S. 742, 748-49 (1970). The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id*. at 748. The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id*. at 749. A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Id*. at 755, 757. "[T]he decision whether or not to plead guilty ultimately rests with the client." *Lyons v. Jackson*, 299 F.3d 588, 598 (6th Cir. 2002).

The prosecutor in this case agreed to dismiss charges of first-degree murder in exchange for Petitioner pleading guilty to second-degree murder with a 15-to-30 year sentencing agreement. The dismissed charge carried a mandatory non-parolable life sentence. Petitioner denied under oath that anyone had threatened her to accept the plea bargain. The trial court, in denying Petitioner's motion to withdraw her plea, held that Petitioner was fabricating her allegation that she was coerced.

The plea colloquy shows that Petitioner was informed of the maximum possible sentence she faced if she stood trial, and she was advised of the exact sentence she would receive if she accepted the plea bargain. She was also informed of the rights she was waiving by pleading guilty, such as the right to a trial by jury. Petitioner stated that no promises or threats had been made to her in exchange for her plea beyond those stated on the record. Petitioner's "[s]olemn declarations in open court" that his plea was freely, understandingly, and voluntarily made, "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Nothing in clearly established Supreme

6

Court law compelled the state courts to accept Petitioner's contrary allegations made after she entered her plea.

Having reviewed the record, the Court is satisfied that Petitioner's plea was knowing, intelligent, and voluntary and that the state court's opinion finding the same was not contrary to or an unreasonable application of Supreme Court precedent.

Petitioner relatedly asserts that her plea was the result of the ineffective assistance of counsel. She asserts that her counsel had no interest in the case but to negotiate a plea deal.

A defendant has the right to effective assistance of counsel when considering whether to accept a plea bargain. *Lafler v. Cooper*, U.S. , , 132 S. Ct. 1376, 1387, 182 L. Ed. 2d 398 (2012). But to prevail on a claim that trial counsel was ineffective during plea negotiations, the petitioner must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). This requires showing that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The "prejudice" prong of the two-part *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. In other words, the defendant "must show [that] the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. 1384.

Petitioner was originally charged with a life offense and her counsel negotiated a plea bargain that secured a 15-to-30 year sentence. Her allegation that her counsel had no interest in her case is belied by the prosecutor's comment during the plea hearing that the bargain was the product of a lengthy process and by Petitioner's own denial that anyone forced her to plead guilty. There is no record evidence that Petitioner's counsel performed deficiently, and because the state court adjudicated this claim on the merits, Petitioner may not now rely on evidence or allegations that

7

were not put before the state courts. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Therefore, Petitioner has failed to demonstrate that she was denied the effective assistance of counsel or that the state adjudication of this claim was unreasonable.

B. Validity of Sentence

Petitioner next claims that her sentencing guidelines were scored incorrectly and that the trial court relied upon false information at sentencing.

It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Petitioner's argument that the state court erred in scoring his sentencing guidelines is based solely on the state court's interpretation of state law. It does not implicate any federal rights. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."). "[A] claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review." See *Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007); see also *Coleman v. Curtin*, 425 F. App'x 483, 484-85 (6th Cir. 2011). Therefore, habeas corpus relief is not available for this claim.

Petitioner's argument regarding the information mentioned by the trial court at sentencing is also without merit given that she received the sentence contained in the plea agreement. See *Watkins v. Scutt*, No. 5:09-CV-11285, 2010 U.S. Dist. LEXIS 73216, at *6 (June 11, 2010) (Komives, M.J.), magistrate judge's report and recommendation adopted, 2010 U.S. Dist. LEXIS 73161, 2010 WL 2870058 (E.D. Mich. July 21, 2010) (O'Meara, J.); *United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005) (alleged error in court scoring sentencing guidelines was irrelevant where defendant agreed to specific sentence, and thus his sentence arose from the plea

itself and not the guidelines). Accordingly, Petitioner's sentencing claims are without merit.

For these reasons, the petition will be denied.

### IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because her claim is completely without merit. The Court will therefore deny a certificate of appealability.

The Court will, however, grant permission to appeal in forma pauperis because any appeal of this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

### V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

                                              S/Victoria A. Roberts
                                              Hon. Victoria A. Roberts
                                              United States District Judge

Dated: 2/10/2016